# EXHIBIT A

#39303250_v1

FORM NO. 353-3—CITATION

# THE STATE OF TEXAS

## CITATION

To:   **FOUNDATION AUTOMOTIVE CORPORATION**
**2424 4TH STREET SW #520**
**CALGARY, ALBERTA T2S 2T4**
**CANADA**

No.: **DC-26-03483**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. on the Monday next following the expiration of twenty days after you were served this citation and **ORIGINAL** petition, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **162nd District Court** at 600 Commerce Street, Dallas, Texas 75202.

Said Plaintiff being **DEALER SUPPORT NETWORK, LLC**

Filed in said Court  **23rd day of February, 2026** against

**FOUNDATION AUTOMOTIVE CORPORATION; FOUNDATION AUTOMOTIVE US CORPORATION**

For Suit, said suit being numbered **DC-26-03483,** the nature of which demand is as follows:
Suit on **OTHER CONTRACT** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 4th day of March, 2026**

ATTEST: FELICIA PITRE,
Clerk of the District Courts of Dallas County, Texas

By _Medelin Navarrete_ , Deputy
**MEDELIN NAVARRETE**

**DEALER SUPPORT NETWORK, LLC**
vs.
**FOUNDATION AUTOMOTIVE CORPORATION et al**

**ISSUED**
**on this the 4th day of March, 2026**

**FELICIA PITRE**
**Clerk District Courts,**
**Dallas County, Texas**

By: **MEDELIN NAVARRETE**, Deputy

**Attorney for Plaintiff**
**NICHOLAS HUGH PARKS**
**THE PARKS LAW FIRM PC**
**PO BOX 200**
**SHANNON AL  35142**
**(214) 991-2642**
nhparks@gmail.com
DALLAS COUNTY
SERVICE FEES
NOT PAID



FILED
2/23/2026 1:24 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Cheryl Watts DEPUTY

2 CIT ES

CAUSE No. DC-26-03483

## STATE OF TEXAS

| | | |
|---|---|---|
| Dealer Support Network, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | IN THE DISTRICT COURT OF |
| v. | ) | DALLAS COUNTY |
| | ) | |
| Foundation Automotive Corporation and | ) | 162nd JUDICIAL DISTRICT |
| | ) | |
| Foundation Automotive US Corporation, | ) | DALLAS COUNTY, TEXAS |
| | ) | |
| Defendants | ) | |
| | ) | |

## INITIAL PETITION

COMES NOW Plaintiff, by and through counsel, and files this Initial Petition against Defendants Foundation Automotive Corporation and Foundation Automotive US Corporation (collectively, "Defendants" or "Foundation") and will show the Court as follows:

1.      Plaintiff Dealer Support Network, LLC is a Texas limited liability company headquartered in Winnsboro, Wood County, Texas. Plaintiff is organized, owned and managed by Claudia and Jason Poucher, adult residents of Winnsboro, Wood County, Texas.

2.      Dealer Support Network, LLC operates under the assumed names "Dealer Support Network" and "THE Search Firm."

Plaintiff's Initial Petition - Page 1 of 6

3. Defendant Foundation Automotive Corporation is a foreign corporation, headquartered in Calgary, Alberta, Canada.

4. Defendant Foundation Automotive US Corporation is a subsidiary of Defendant Foundation Automotive Corporation and a foreign corporation formed in Delaware and headquartered at 211 Highland Cross Drive, Suite 260, Houston, Texas 77073.

5. The Registered Agent of Defendant Foundation Automotive US Corporation is Corporate Creations Network, Inc., located at 2595 N. Dallas Parkway, Suite 350, Frisco, Texas 75034.

6. Subject to Texas Rule of Civil Procedure 47, Plaintiff estimates their damages are greater than $1,000,000.

7. Subject to Texas Rule of Civil Procedure 190.3, Plaintiff elects Discovery Control Plan Level 2.

## FACTUAL ALLEGATIONS

8. DSN and Foundation entered three Buyer's Broker Representation Agreements dated August 2, 2018, September 20, 2018, and January 15, 2020.

9. The two BBRAs entered into on September 20, 2018 and January 15, 2020 are the Agreements relevant to this lawsuit (collectively, "BBRAs" or "Agreements"). See, *Ex. A, 2018 and 2020 BBRAs.*

10. The January 15, 2020 BBRA, containing identical terms, was understood by the parties to be an extension to the term of the September 20, 2018 BBRA.

11. Pursuant to the Agreements, DSN promised to identify potential automobile dealerships ("Targets") for purchase by Foundation. *Id.,* at p.1, 6. Upon the successful completion of

purchase of a Target identified by DSN, Foundation would pay DSN a broker's fee, defined as an Asset Fee. *Id.,* at p.2, 7; ¶5.A.

12. The BBRAs required the payment of an Asset Fee of 5.5% of total sales prices, or a minimum fee of $250,000 and a maximum fee of $1,000,000, per deal, including real estate. *Ibid.*

13. The BBRAs each had a term of one year, after which a twenty-four month Protection Period would apply. The Protection Period was defined as a period of time during which the Asset Fee would become due and payable should Foundation "purchase any interest in a Target (auto dealership) brought to by [DSN]…." *Id.,* at p.3, 8; ¶5.C.

14. The BBRAs required that Buyer and Target, upon signing any "Acquisition Agreement," appoint an escrow agent that was "reasonably acceptable" to DSN, to whom Foundation agreed to provide a complete copy of the BBRAs to escrow agent. *Id.,* at p.3, 8; ¶5.D.

15. The BBRAs further required that the payment of DSN's Asset Fee be provided for in all Acquisition Agreements and Closing documents, "with the payment in full of Consultant's Asset Fee being a condition to the Closing, including the settlement of escrow." *Ibid.*

16. The BBRAs provided that the total sales price, "for purposes of calculating the Consultant's Asset Fee, shall be the true value of all assets being conveyed (other than new vehicle inventory and/or used vehicle inventory), including goodwill and/or 'blue sky,' customer sales and/or service lists or files, and any other benefits paid to, afforded or conferred upon the Target…, which are necessary to close the transaction." *Id.,* at p.3, 8; ¶5.E.

17. Between late 2018 and 2021, DSN provided information to Foundation concerning several automobile dealerships located in Wichita Falls, Texas that were for sale (the "Patterson

Dealerships"). The Patterson Dealerships were owned and operated by PT Auto Group, LLC ("PT Auto") and Harry Patterson.

18. Regarding Foundation's potential purchase of the Patterson Dealerships, DSN's President and CEO, Jason Poucher, communicated primarily with Kevin Kutschinski, Foundation's President and CEO, and Charles Kramer, Foundation's Chief Operating Officer and Vice President.

19. DSN assisted with the provision and execution of a Confidentiality Agreement between Foundation and PT Auto in late 2018 or early 2019.

20. DSN assisted with the drafting of a letter of intent expressing Foundation's interest in purchasing the assets of the Patterson Dealerships in early 2019.

21. In early to mid-2019, Foundation represented that it would not be purchasing the Patterson Dealerships, as it had moved on to other transactions.

22. DSN subsequently followed up with additional information regarding the Patterson Dealerships, as well as other potential acquisitions, for the next few years.

23. At no point between mid-2019 and early 2022 did Foundation inform DSN that it had resumed negotiations for purchase of the Patterson Dealerships.

24. On February 23, 2022, Foundation issued a press release informing the public that it had completed the purchase of Patterson Dealerships, purchasing the following Patterson Dealerships: Buick GMC, Cadillac, Hyundai, BMW, Chrysler Dodge Jeep Ram, Kia, an RV dealership, and a used vehicle dealership.

25. On August 30, 2022, Foundation issued another press release, informing the public that it had completed the purchase of a Mercedes-Benz dealership from PT Auto, bringing the total number of dealerships purchased from PT Auto to nine.

26. Upon information and belief, Foundation spent between $60 million and $80 million on the purchases of the Patterson Dealerships, including its acquisition of all real estate necessary to the operation of the dealerships.

27. Foundation never informed DSN of the purchases prior to Closing or its issuance of press releases.

28. Upon information and belief, Foundation failed to include information concerning the BBRAs or the brokers' fees owed to DSN in its acquisition documents.

29. Foundation never made any payment to DSN of the Asset Fees owed pursuant to its purchases of the Patterson Dealerships.

30. Foundation has refused to have any direct communication with DSN since that time.

31. DSN demanded and scheduled mediation on February 17, 2026, but has to date received no response from Foundation.

32. DSN estimates it is owed between $3.85 million and $5.5 million, plus applicable interest, by Foundation, pursuant to the BBRAs.

## CAUSE OF ACTION: BREACH OF CONTRACT

33. Plaintiff reasserts and incorporates the above paragraphs as if set forth fully herein.

34. Plaintiff and Defendants were party to multiple contracts (BBRAs) during the relevant period of time.

35. Plaintiff performed its obligations under the BBRAs at all times.

36. Defendants breached the contracts when they failed to compensate Plaintiff according to the terms of the BBRAs.

37.    Plaintiff was damaged by Defendants' conduct in an amount estimated to be between $3.85 million and $5.5 million.

38.    Subject to the terms of the Franchise Agreement, Plaintiff is entitled to recover their reasonable and necessary attorneys' fees and costs.

## PRAYER

Plaintiff prays that this Court award all recoverable damages, including compensatory damages, reasonable attorneys' fees and costs, prejudgment and post-judgment interest, and any other relief to which Plaintiff may be entitled.

Dated: February 23, 2026

Respectfully submitted,

/s/ Nicholas H. Parks
Nicholas H. Parks, Esq.

The Parks Law Firm, PC
TX Bar No.:    24058032
The Parks Law Firm, PC
PO Box 200
Shannon, AL 35142
Tel:        214-991-2642
Fax:        214-441-6425
Email:      nhparks@gmail.com

**EXHIBIT A: 2018 and 2020 BBRAs**

## BUYER'S BROKER REPRESENTATION AGREEMENT

This BUYER'S BROKER REPRESENTATION AGREEMENT, entered into on the 20th day of September of 2018, is by and between the following parties:

Buyer:

Name:  Foundation Auto Corp c/o Kevin Kutschinski                    (the "Buyer")
Address: 520, 2424 4th Street SW
City, State, Zip:  Calgary, AB
Phone:  C: (403) 990-9908; D: (403) 457-9896   Fax:
E-Mail:  KevinK@FoundationAuto.com

Consultant:

Name: THE Search Firm                                        (the "Consultant")
Address:  471 PR 8556
City, State, Zip:  Winnsboro, TX 75494
Phone:  (972) 200-3400                    Fax: (888) 848-0915
E-Mail: Poucher@AutomotiveBuySell.com

WHEREAS, Buyer desires to engage Consultant's services and to grant to Consultant the non-exclusive right to act as Buyer's representative and Consultant in connection with Buyer's possible acquisition of automobile dealerships ("Targets"), through the purchase of assets or equity interests, partnership, or joint venture arrangement, or other arrangements, as well as the acquisition or lease of a Target's related real estate.

WHEREAS, Consultant is willing to provide such services to Buyer pursuant to the terms and conditions contained in this Agreement.

NOW, THEREFORE, for the premises, agreements, terms and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer and Consultant hereby agree to the following:

1.  Engagement. Buyer hereby engages Consultant to identify Targets that may be available to Buyer to buy-in, buy-out, participate in a partnership arrangement; obtain an assignment or sale of a manufacturer's "Letter of Intent", purchase of assets, acquisition of equity interests, or similar transaction that results in Buyer's ownership or control of the Target's business operations. Buyer acknowledges that Consultant represents other prospective buyers seeking to acquire automobile dealerships that may be of interest to Buyer, and Buyer agrees that Consultant may, during the term of this Agreement and thereafter, represent such other parties and present to the other parties the same Targets that Consultant presents to Buyer. Buyer may also use other Brokers to acquire other dealerships before, during and after the expiration of this agreement.

2.  Representations.

    A.  Each person signing this agreement represents that the person has the legal capacity and authority to bind the respective party to this agreement.

Initialed for Identification by Buyer _KK_ and Consultant _JP_                    Page 1 of 5

www.getTHEsearchfirm.com
office :: 972/200-3400 : fax :: 888/848-0915

**BUYER'S BROKER REPRESENTATION AGREEMENT**

B.  Buyer represents that Buyer is not now a party to another buyer or tenant representation agreement with another Consultant for the acquisition of ownership or control of a Target's business operations. Buyer currently is working with other Brokers, but will not engage another Broker on any Target brought to the Buyer by Consultant.

C.  Buyer represents that all information relating to Buyer's ability to acquire ownership or control of a Target's business operations is true and correct.

3.  <u>Competing Buyers</u>. Buyer acknowledges that Consultant may represent other prospective buyers or tenants who may seek to acquire Targets that may be of interest to Buyer. Buyer agrees that Consultant may, during the term of this agreement and after it ends, represent such other prospects, show to the other prospects the same Targets that Consultant shows to Buyer, and act as Consultant for such other prospects in negotiating the acquisition of Targets that Buyer may seek to acquire.

4.  <u>Confidential Information</u>. Buyer agrees that all information supplied to him by Consultant concerning a prospective Target shall be kept strictly confidential, because of its proprietary nature and the possible material harm that the Target could suffer if the information is disclosed. Buyer shall execute and deliver such confidentiality and/or non-disclosure agreements that a Target may reasonably require from Buyer. Consultant may not knowingly disclose information obtained in confidence from Buyer except as authorized by Buyer or required by law. Consultant may not disclose to Buyer any information obtained in confidence regarding any other person Consultant represents or may have represented except as required by law.

5.  <u>Consultant's Fees</u>.

A.  In connection with Buyer's acquiring a Target, Buyer shall pay Consultant a fee of Five and One-Half percent (5.5%) on the total sales price and/or other consideration given for a Target, as described in Section 5.D. hereof, or a minimum flat fee of Two Hundred and Fifty Thousand Dollars ($250,000.00) whichever is greater, and a maximum flat fee of One Million Dollars ($1,000,000.00) whichever is lesser, per deal, including real estate (where applicable) (the "Asset Fee"). This fee will be paid in full and upon closing or as described in Section 5.B. below.

B.  Consultant's Asset Fee shall be identified in any definitive agreement with a Target ("Acquisition Agreement") as payable at any closing thereunder. Buyer shall notify Consultant of the closing related to any Target (a "Closing") upon the determination of the date for such Closing. Consultant's Asset Fee shall be payable in cash or immediately available funds to Consultant upon (i) Closing, (ii) the assumption of management of the Target's business other occupancy of the Target's premises by Buyer, Buyer's assignees or Buyer's representatives (collectively, "Buyer Parties", or individually, a "Buyer Party"), or (iii) pursuant to any other provision of this Agreement. Any money received by a Target or its affiliate, directly or indirectly, from a Buyer Party, shall also be deemed a Closing, and Consultant shall be paid in full at that time all of its Asset Fee.

Initialed for Identification by Buyer ___ and Consultant ___                                        Page 2 of 5



## BUYER'S BROKER REPRESENTATION AGREEMENT

C. If, during the term of this Agreement or within twenty-four (24) months thereafter (the "Protection Period"), any Buyer Party purchases any interest in a Target brought to by the Consultant or its assets (in whole or in part), or provides management services to a Target, then Buyer agrees to pay to Consultant the Asset Fee under this Agreement. If a manufacturer acquires a Target identified by Consultant and Buyer becomes a partner in or is granted any type of ownership position or opportunity for ownership in such Target's dealership operations within the Protection Period, Consultant shall be entitled to its Asset Fee and payment provisions described above shall apply.

D. When any Acquisition Agreement is signed by both Buyer and a Target, an escrow agent reasonably acceptable to Consultant shall be appointed to receive any deposit required of Buyer under the Acquisition Agreement, and a complete copy of this Agreement will be furnished to such escrow agent. The payment of all of Consultant's Asset Fee shall be provided for in all Acquisition Agreements and the corresponding Closing documents, with the payment in full of Consultant's Asset Fee being a condition to the Closing, including the settlement of escrow. If the referenced agreements and documents do not include said information, then Buyer shall be responsible for all compensation owed to Consultant under this Agreement.

E. The total sales price, for purposes of calculating the Consultant's Asset Fee, shall be the true value of all assets being conveyed (other than new vehicle inventory and/or used vehicle inventory), including good will and/or "blue sky," customer sales and/or services lists or files, and any other benefits paid to, afforded or conferred upon the Target; such as, deferred compensation, management, Consultant, or non-compete agreements, payments of any out-of-trust condition, repayment of any loans to the Target or such affiliate, or any other debts paid by Buyer for the benefit of Target, which are necessary to close the transaction.

6. Mediation. The parties agree to negotiate in good faith in an effort to resolve any dispute that may arise related to this Agreement or any transaction related to or contemplated by this Agreement. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator.

7. Default. If either party fails to comply with this Agreement or makes a false representation in this Agreement, the non-complying party is in default. If Buyer is in default, Buyer will be liable for the amount of compensation that Consultant would have received under this Agreement if Buyer was not in default. If Consultant is in default, Buyer may exercise any remedy at law.

8. LIMITATION OF LIABILITY: **Neither Consultant nor any other Consultant, or their associates, is responsible or liable for Buyer's personal injuries or for any loss or damage to Buyer's property that is not caused by Consultant. Buyer will hold Consultant, any other Consultant, and their associates, harmless from any such injuries or losses. Buyer will indemnify Consultant against any claims for injury or damage that Buyer may cause to others or their property.**

Initialed for Identification by Buyer ⟪Dan⟫ and Consultant ⟪AP⟫

Page 3 of 5

**BUYER'S BROKER REPRESENTATION AGREEMENT**

9.    Additional Agreements, Provisions, and Notices.

A.  The covenants, mutual agreements, terms and conditions contained in this Agreement, including, without limitation, Buyer's obligations to pay Consultant its compensation, are binding upon and inure to the benefit of each party's heirs, administrators, executors, successors, and assigns.

B.  If Buyer does not enter into an Acquisition Agreement under this Agreement, but an affiliate of Buyer enters into an Acquisition Agreement with a Target that Consultant brings to Buyer's attention, Consultant will be entitled to all compensation under this Agreement as if Buyer was the acquiring party to such Acquisition Agreement. "Affiliate" means, without limitation, any assignee of Buyer, any family member or relation of Buyer, any officer, director, or partner of Buyer, any entity owned or controlled, in whole or part, by Buyer, and any entity that owns or controls Buyer, in whole or part.

C.  Consultant does not guarantee that Buyer will acquire a Target by entering into this Agreement. However, if Buyer informs a third party about any Target, Buyer will be responsible for Consultant's Asset Fee as provided for herein in the event that the third party, the third party's agent, or someone else who has received the information by reason of Buyer's disclosure, acquires the Target, the Target's business, or real estate related thereto.

D.  Texas law governs the interpretation, validity, performance, and enforcement of this agreement. Venue for any legal proceeding shall lie exclusively in the courts of Dallas, Dallas County, Texas.

E.  If a court finds any clause in this Agreement invalid or unenforceable, the remainder of this Agreement will not be affected and all other provisions of this Agreement will remain valid and enforceable.

F.  If Buyer or Consultant is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

G.  Consultant assumes no responsibility for the accuracy, usability, or reliability of any financial statements or other information furnished by or received from any Target its accountants, Consultants, attorneys, representatives, or other sources. Buyer further agrees to indemnify and hold Consultant, its officers, directors, employees, associates, agents, heirs, and family members harmless of any and all claims arising from this Agreement or any Acquisition Agreement.

H.  This Agreement remains in full force and effect until the earlier of (a) ten business days after either party notifies the other party, in writing, that it wishes to terminate this Agreement; or (b) one year from the date hereof. In the event of the termination of this Agreement for any reason, Buyer shall continue to be bound by the terms of Sections 4 and 5.C. above.

Initialed for Identification by Buyer _|(ιι_ and Consultant _(/P_                                    Page 4 of 5

www.getTHEsearchfirm.com
office :: 972/200-3400 : fax :: 888/848-0915



## BUYER'S BROKER REPRESENTATION AGREEMENT

I.  This Agreement contains the entire agreement of the parties and may not be changed except by written agreement.

J.  Neither party may assign this Agreement without the written consent of the other party.

K.  Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail specified in the introductory paragraph of this Agreement.

L.  Consultant's fees and fees between Consultants are not fixed, controlled, recommended, or suggested by the Texas Association of REALTORS®, its local affiliates, or any listing service. Consultant's fees are negotiable.

M.  Consultant's services are made available without regard to race, color, religion, national origin, sex, disability, or familial status. Local ordinances may provide for additional protected classes.

N.  Consultant is not a property inspector, surveyor, engineer, or environmental assessor. Buyer should seek experts to render such services for any property Buyer seeks to acquire.

O.  If Buyer purchases property, Buyer should have an abstract covering the property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

P.  Consultant cannot give legal advice. This is a legally binding agreement. READ IT CAREFULLY. If you do not understand the effect of this agreement, consult your attorney BEFORE signing.

UNDERSTOOD AND AGREED THIS 20th DAY OF September 2018.

CONSULTANT: THE Search Firm

By: _____
Name: Jason R. Poucher
Title: President/CEO
License No.: 0548320

BUYER: Foundation Auto Corp

By: _____
Name: Kevin Kutschinski
Title: President/CEO

Initialed for Identification by Buyer kau and Consultant

Page 5 of 5

DocuSign Envelope ID: 08CB2E4A-359B-447B-B79B-BFBD3409EF92



## BUYER'S BROKER REPRESENTATION AGREEMENT

This BUYER'S BROKER REPRESENTATION AGREEMENT, entered into on the 16th day of January of 2020, is by and between the following parties:

<u>Buyer:</u>

Name: Foundation Auto Corp c/o Charles H. Kramer Jr. _____ (the "Buyer")
Address: 520, 2424 4th Street SW _____
City, State, Zip: Calgary, AB _____
Phone: C: (832) 519-6338 _____ Fax: _____
E-Mail: chuckk@foundationauto.com _____

<u>Consultant:</u>

Name: THE Search Firm _____ (the "Consultant")
Address: 471 PR 8556 _____
City, State, Zip: Winnsboro, TX 75494 _____
Phone: (972) 200-3400 _____ Fax: (888) 848-0915 _____
E-Mail: Poucher@AutomotiveBuySell.com _____

WHEREAS, Buyer desires to engage Consultant's services and to grant to Consultant the non-exclusive right to act as Buyer's representative and Consultant in connection with Buyer's possible acquisition of automobile dealerships ("Targets"), through the purchase of assets or equity interests, partnership, or joint venture arrangement, or other arrangements, as well as the acquisition or lease of a Target's related real estate.

WHEREAS, Consultant is willing to provide such services to Buyer pursuant to the terms and conditions contained in this Agreement.

NOW, THEREFORE, for the premises, agreements, terms and conditions contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer and Consultant hereby agree to the following:

1. <u>Engagement.</u> Buyer hereby engages Consultant to identify Targets that may be available to Buyer to buy-in, buy-out, participate in a partnership arrangement; obtain an assignment or sale of a manufacturer's "Letter of Intent", purchase of assets, acquisition of equity interests, or similar transaction that results in Buyer's ownership or control of the Target's business operations. Buyer acknowledges that Consultant represents other prospective buyers seeking to acquire automobile dealerships that may be of interest to Buyer, and Buyer agrees that Consultant may, during the term of this Agreement and thereafter, represent such other parties and present to the other parties the same Targets that Consultant presents to Buyer. Buyer may also use other Brokers to acquire other dealerships before, during and after the expiration of this agreement.

2. <u>Representations.</u>

   A. Each person signing this agreement represents that the person has the legal capacity and authority to bind the respective party to this agreement.

Initialed for Identification by Buyer _____ and Consultant _____ *JRP* —DS

Page 1 of 5

www.getTHEsearchfirm.com
office :: 972/200-3400 : fax :: 888/848-0915

## BUYER'S BROKER REPRESENTATION AGREEMENT

B. Buyer represents that Buyer is not now a party to another buyer or tenant representation agreement with another Consultant for the acquisition of ownership or control of a Target's business operations. Buyer currently is working with other Brokers, but will not engage another Broker on any Target brought to the Buyer by Consultant.

C. Buyer represents that all information relating to Buyer's ability to acquire ownership or control of a Target's business operations is true and correct.

3. Competing Buyers. Buyer acknowledges that Consultant may represent other prospective buyers or tenants who may seek to acquire Targets that may be of interest to Buyer. Buyer agrees that Consultant may, during the term of this agreement and after it ends, represent such other prospects, show to the other prospects the same Targets that Consultant shows to Buyer, and act as Consultant for such other prospects in negotiating the acquisition of Targets that Buyer may seek to acquire.

4. Confidential Information. Buyer agrees that all information supplied to him by Consultant concerning a prospective Target shall be kept strictly confidential, because of its proprietary nature and the possible material harm that the Target could suffer if the information is disclosed. Buyer shall execute and deliver such confidentiality and/or non-disclosure agreements that a Target may reasonably require from Buyer. Consultant may not knowingly disclose information obtained in confidence from Buyer except as authorized by Buyer or required by law. Consultant may not disclose to Buyer any information obtained in confidence regarding any other person Consultant represents or may have represented except as required by law.

5. Consultant's Fees.

A. In connection with Buyer's acquiring a Target, Buyer shall pay Consultant a fee of Five and One-Half percent (5.5%) on the total sales price and/or other consideration given for a Target, as described in Section 5.D. hereof, or a minimum flat fee of Two Hundred and Fifty Thousand Dollars ($250,000.00) whichever is greater, and a maximum flat fee of One Million Dollars ($1,000,000.00) whichever is lesser, per deal, including real estate (where applicable) (the "Asset Fee"). This fee will be paid in full and upon closing or as described in Section 5.B. below.

B. Consultant's Asset Fee shall be identified in any definitive agreement with a Target ("Acquisition Agreement") as payable at any closing thereunder. Buyer shall notify Consultant of the closing related to any Target (a "Closing") upon the determination of the date for such Closing. Consultant's Asset Fee shall be payable in cash or immediately available funds to Consultant upon (i) Closing, (ii) the assumption of management of the Target's business other occupancy of the Target's premises by Buyer, Buyer's assignees or Buyer's representatives (collectively, "Buyer Parties", or individually, a "Buyer Party"), or (iii) pursuant to any other provision of this Agreement. Any money received by a Target or its affiliate, directly or indirectly, from a Buyer Party, shall also be deemed a Closing, and Consultant shall be paid in full at that time all of its Asset Fee.

Initialed for Identification by Buyer _____ and Consultant _____ *JRP*

Page 2 of 5

# BUYER'S BROKER REPRESENTATION AGREEMENT

C. If, during the term of this Agreement or within twenty-four (24) months thereafter (the "Protection Period"), any Buyer Party purchases any interest in a Target brought to by the Consultant or its assets (in whole or in part), or provides management services to a Target, then Buyer agrees to pay to Consultant the Asset Fee under this Agreement. If a manufacturer acquires a Target identified by Consultant and Buyer becomes a partner in or is granted any type of ownership position or opportunity for ownership in such Target's dealership operations within the Protection Period, Consultant shall be entitled to its Asset Fee and payment provisions described above shall apply.

D. When any Acquisition Agreement is signed by both Buyer and a Target, an escrow agent reasonably acceptable to Consultant shall be appointed to receive any deposit required of Buyer under the Acquisition Agreement, and a complete copy of this Agreement will be furnished to such escrow agent. The payment of all of Consultant's Asset Fee shall be provided for in all Acquisition Agreements and the corresponding Closing documents, with the payment in full of Consultant's Asset Fee being a condition to the Closing, including the settlement of escrow. If the referenced agreements and documents do not include said information, then Buyer shall be responsible for all compensation owed to Consultant under this Agreement.

E. The total sales price, for purposes of calculating the Consultant's Asset Fee, shall be the true value of all assets being conveyed (other than new vehicle inventory and/or used vehicle inventory), including good will and/or "blue sky," customer sales and/or services lists or files, and any other benefits paid to, afforded or conferred upon the Target; such as, deferred compensation, management, Consultant, or non-compete agreements, payments of any out-of-trust condition, repayment of any loans to the Target or such affiliate, or any other debts paid by Buyer for the benefit of Target, which are necessary to close the transaction.

6. <u>Mediation</u>. The parties agree to negotiate in good faith in an effort to resolve any dispute that may arise related to this Agreement or any transaction related to or contemplated by this Agreement. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and will equally share the costs of a mutually acceptable mediator.

7. <u>Default</u>. If either party fails to comply with this Agreement or makes a false representation in this Agreement, the non-complying party is in default. If Buyer is in default, Buyer will be liable for the amount of compensation that Consultant would have received under this Agreement if Buyer was not in default. If Consultant is in default, Buyer may exercise any remedy at law.

8. **LIMITATION OF LIABILITY: <u>Neither Consultant nor any other Consultant, or their associates, is responsible or liable for Buyer's personal injuries or for any loss or damage to Buyer's property that is not caused by Consultant. Buyer will hold Consultant, any other Consultant, and their associates, harmless from any such injuries or losses. Buyer will indemnify Consultant against any claims for injury or damage that Buyer may cause to others or their property.</u>**

Initialed for Identification by Buyer _____ and Consultant _____ JRP

www.getTHEsearchfirm.com
office :: 972/200-3400 : fax :: 888/848-0915



## BUYER'S BROKER REPRESENTATION AGREEMENT

9.    Additional Agreements, Provisions, and Notices.

A.   The covenants, mutual agreements, terms and conditions contained in this Agreement, including, without limitation, Buyer's obligations to pay Consultant its compensation, are binding upon and inure to the benefit of each party's heirs, administrators, executors, successors, and assigns.

B.   If Buyer does not enter into an Acquisition Agreement under this Agreement, but an affiliate of Buyer enters into an Acquisition Agreement with a Target that Consultant brings to Buyer's attention, Consultant will be entitled to all compensation under this Agreement as if Buyer was the acquiring party to such Acquisition Agreement. "Affiliate" means, without limitation, any assignee of Buyer, any family member or relation of Buyer, any officer, director, or partner of Buyer, any entity owned or controlled, in whole or part, by Buyer, and any entity that owns or controls Buyer, in whole or part.

C.   Consultant does not guarantee that Buyer will acquire a Target by entering into this Agreement. However, if Buyer informs a third party about any Target, Buyer will be responsible for Consultant's Asset Fee as provided for herein in the event that the third party, the third party's agent, or someone else who has received the information by reason of Buyer's disclosure, acquires the Target, the Target's business, or real estate related thereto.

D.   Texas law governs the interpretation, validity, performance, and enforcement of this agreement. Venue for any legal proceeding shall lie exclusively in the courts of Dallas, Dallas County, Texas.

E.   If a court finds any clause in this Agreement invalid or unenforceable, the remainder of this Agreement will not be affected and all other provisions of this Agreement will remain valid and enforceable.

F.   If Buyer or Consultant is a prevailing party in any legal proceeding brought as a result of a dispute under this agreement or any transaction related to or contemplated by this agreement, such party will be entitled to recover from the non-prevailing party all costs of such proceeding and reasonable attorney's fees.

G.   Consultant assumes no responsibility for the accuracy, usability, or reliability of any financial statements or other information furnished by or received from any Target its accountants, Consultants, attorneys, representatives, or other sources. Buyer further agrees to indemnify and hold Consultant, its officers, directors, employees, associates, agents, heirs, and family members harmless of any and all claims arising from this Agreement or any Acquisition Agreement.

H.   This Agreement remains in full force and effect until the earlier of (a) ten business days after either party notifies the other party, in writing, that it wishes to terminate this Agreement; or (b) one year from the date hereof. In the event of the termination of this Agreement for any reason, Buyer shall continue to be bound by the terms of Sections 4 and 5.C. above.

Initialed for Identification by Buyer _____ and Consultant _____ *JRP*

Page 4 of 5

www.getTHEsearchfirm.com
office :: 972/200-3400 : fax :: 888/848-0915

DocuSign Envelope ID: 08CB2F4A7319E447B-B39B-BFBD3409FF92

# BUYER'S BROKER REPRESENTATION AGREEMENT

I. This Agreement contains the entire agreement of the parties and may not be changed except by written agreement.

J. Neither party may assign this Agreement without the written consent of the other party.

K. Notices between the parties must be in writing and are effective when sent to the receiving party's address, fax, or e-mail specified in the introductory paragraph of this Agreement.

L. Consultant's fees and fees between Consultants are not fixed, controlled, recommended, or suggested by the Texas Association of REALTORS®, its local affiliates, or any listing service. Consultant's fees are negotiable.

M. Consultant's services are made available without regard to race, color, religion, national origin, sex, disability, or familial status. Local ordinances may provide for additional protected classes.

N. Consultant is not a property inspector, surveyor, engineer, or environmental assessor. Buyer should seek experts to render such services for any property Buyer seeks to acquire.

O. If Buyer purchases property, Buyer should have an abstract covering the property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a title policy.

P. Consultant cannot give legal advice. This is a legally binding agreement. READ IT CAREFULLY. If you do not understand the effect of this agreement, consult your attorney BEFORE signing.

UNDERSTOOD AND AGREED THIS __15__ DAY OF _January_ 2020.

CONSULTANT: THE Search Firm                BUYER: Foundation Auto Corp

By: _Jason Rey Poucher_                    By: _____
Name: Jason R. Poucher                     Name: Charles H. Kramer Jr.
Title: President/CEO                        Title: Chief Operating Officer/Vice President
License No.: 0548320

Initialed for Identification by Buyer _____ and Consultant _____ *JRP*

Page 5 of 5

www.getTHEsearchfirm.com
office :: 972/200-3400 : fax :: 888/848-0915